UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI JARRAHI and HAMID JARRAHIKHAMENEH,<br><br>      Plaintiffs,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as U.S. Secretary of State, and ROBERT JACHIM, in his official capacity as Acting Director of Screening, Analysis and Coordination,<br><br>      Defendants. | Case No.:  25-CV-572 JLS (BLM)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 6) |

Presently before the Court is Defendants Marco Rubio's and Robert Jachim's Motion to Dismiss ("Mot.," ECF No. 6).  Plaintiffs Ali Jarrahi ("Jarrahi") and Hamid Jarrahikhameneh ("Jarrahikhameneh") (collectively, "Plaintiffs") filed an Opposition ("Opp'n," ECF No. 7), to which Defendants submitted a Reply ("Reply," ECF No. 8). Having carefully considered the Complaint ("Compl.," ECF No. 1), the Parties' submissions, and the law, the Court **GRANTS** Defendant's Motion.

/ / /

/ / /

/ / /

1

## BACKGROUND

Jarrahi is a United States citizen and the child of Jarrahikhameneh, a citizen of Iran. Compl. ¶ 59. On November 17, 2021, Jarrahi "took the first step to bring his parents to the United States by filing a Form I-130 with" the United States Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 61. USCIS approved the petition on May 3, 2022, and Jarrahikhameneh thereafter submitted his immigrant visa application (Form DS-260) to the National Visa Center ("NVC") on April 15, 2022. *Id.* ¶¶ 62, 64. The NVC then deemed Jarrahikhameneh's application documentarily complete on October 14, 2022. *Id.* ¶ 65. On May 2, 2024, Jarrahikhameneh attended his interview at the U.S. Embassy in Yerevan where the consular office refused the application pursuant to 8 U.S.C. § 1201(g)—finding that Plaintiffs had not established eligibility for the visa. *Id.* ¶¶ 66–67; Mot. at 12. The consular officer determined that additional security screening was needed and requested that Jarrahikhameneh complete Supplemental Questions for Visa Applicants (Form DS-5535) which included "15 years of detailed history of addresses, employment, travel, and social media handles." *Id.* ¶¶ 67–68. Jarrahikhameneh provided this information promptly. *Id.* ¶ 68. The State Department CEAC website shows Jarrahikhameneh's visa application status as "Refused" and states that the case was "refused for administrative processing" and that the "case will remain refused while undergoing such processing [and] will receive another adjudication once such processing is complete." *Id.* ¶ 69.

Plaintiffs allege that because of this delay, they will continue to experience "severe, particularized, and concrete injur[ies]" which are compounded due to "harsh geopolitical realities." *Id.* ¶ 72. Jarrahi's mother was issued her visa and is now a lawful permanent resident—adding to the "distressing cost of their family's separation" as all Jarrahikhameneh's family now reside in the United States. *Id.* ¶¶ 72, 79.

Plaintiffs filed the Complaint approximately ten months after Jarrahikhameneh's interview alleging unreasonable delay in the adjudication of the visa application. *See*

25-CV-572 JLS (BLM)

*generally* Compl.  Plaintiffs bring three claims for relief.[1]  First, Plaintiffs seek relief based on provisions of the Administrative Procedure Act ("APA"): 5 U.S.C. §§ 706(1) and 555(b).[2]  *Id.* ¶¶ 88–119.  Second, Plaintiffs sue under the Mandamus Act, 28 U.S.C. § 1361.  *Id.* ¶¶ 120–26.  The instant Motion—seeking to dismiss the Complaint in its entirety under Rules 12(b)(1) and 12(b)(6)—followed.  *See* Mot.

## LEGAL STANDARDS

## I.    Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject-matter jurisdiction.  *See Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983).  The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject-matter jurisdiction and may do so via a facial or factual attack.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

---

[1] The claims in the Complaint are labeled Count One, Count Two, and Count Four.  *See* Compl.  The Court concludes this is a typographical error.

[2] Count One includes several allegations surrounding § 706(2).  *See* Compl. ¶ 89.  As the Court has found in its prior similar cases with Plaintiffs' counsel, even though 5 U.S.C. § 706(2) (allowing courts to set aside, for enumerated reasons, final agency action) provides its own cause of action, Plaintiffs do not clarify that they intend to bring such a claim, and any such claim would fail on the merits.  *See Mosayebian*, 2024 WL 3558378, at *4–5, n.2.  Therefore, any claims attempted to be brought under § 706(2) are dismissed.

25-CV-572 JLS (BLM)

In a factual attack, on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In such challenges, courts (1) "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and (2) "need not presume the truthfulness of the plaintiff's allegations." *Id.* After the moving party evidences the lack of subject-matter jurisdiction, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Dismissal under Rule 12(b)(1) is warranted "where the alleged claim under the [C]onstitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). But dismissal under 12(b)(1) is not appropriate when "'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

## II. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." A court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

25-CV-572 JLS (BLM)

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" do not demonstrate a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Review under Rule 8(a) requires a context-specific analysis involving a court's "judicial experience and common sense." *Id.* at 679. A court must "accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). That said, the Court need not accept as true "legal conclusions" contained in the complaint. *Iqbal*, 556 U.S. at 678.

If a complaint does not state a plausible claim for relief, a court should grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

/ / /

/ / /

/ / /

25-CV-572 JLS (BLM)

## DISCUSSION

"The Court cannot help but feel a sense of déjà vu." *Mosayebian v. Blinken*, No. 24-CV-130 JLS (MMP), 2024 WL 3558378, at *4 (S.D. Cal. July 25, 2024). The instant Motion is again alike several others the Court has encountered in the recent past. *Id.* (first citing *Davila v. Cohan*, No. 23-CV-1532 JLS (BLM), 2024 WL 711618, at *5 (S.D. Cal. Feb. 21, 2024); then citing *Infracost Inc. v.Blinken*, 732 F. Supp. 3d 1240, 1250 (S.D. Cal. 2024)). *Infracost* and *Mosayebian*, moreover, involved the same counsel on both sides and, perhaps not coincidentally, *highly similar* briefing. With the caveat that counsel, therefore, should find the following analysis quite familiar, the Court proceeds to address the pending Motion.

Plaintiffs' central contention is that Defendants have unreasonably delayed/unlawfully withheld the final adjudication of Jarrahikhameneh's visa application in violation of 5 U.S.C. § 706(1) and/or the Mandamus Act. Compl. ¶¶ 37–58. Plaintiffs also purport to bring a claim (count two) under § 555(b) of the APA. *Id.* ¶¶ 97–119. That section, however, does not contain an independent cause of action, but instead creates a duty that some courts have held can be enforced through 5 U.S.C. § 706(1). *See* 5 U.S.C. § 555(b); *Iqbal v. Blinken*, No. 2:23-CV-01299-KJM-KJN, 2023 WL 7418353, at *7 (E.D. Cal. Nov. 9, 2023).

The Court thus follows its previous opinions and addresses only Plaintiffs' claims under § 706(1) and the Mandamus Act. For the reasons that follow, the Court concludes Plaintiffs have not stated a plausible claim for relief under either statute.

## I.      Interaction between the APA and Mandamus Act

Section 706(1) of the APA allows courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Only the "unreasonably delayed" prong is at issue here.[3]  "[A] court may compel [delayed] agency action under the APA

---

[3] "[A]n action is 'unlawfully withheld' if 'Congress has specifically provided a deadline for performance' and the agency has not met that deadline." *Alaska Indus. Dev. & Exp. Auth. v. Biden*, 685 F. Supp. 3d 813, 857 (D. Alaska 2023) (quoting *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th

25-CV-572 JLS (BLM)

when the agency (1) has 'a clear, certain, and mandatory duty' and (2) has unreasonably delayed in performing such duty." *Vaz v. Neal*, 33 F.4th 1131, 1136 (9th Cir. 2022) (citations omitted) (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)).

Relatedly, to compel governmental action under the Mandamus Act,[4] a court must find that "(1) the plaintiff's claim is clear and certain; (2) the duty is 'ministerial and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995) (internal quotation marks omitted) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).

The Ninth Circuit has recognized that the relief sought under the Mandamus Act and under § 706(1) of the APA is "essentially the same." *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). So, "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [a court] may elect to analyze the APA claim only." *Vaz*, 33 F.4th at 1135. Here, the APA offers the exact remedy Plaintiffs seek under the Mandamus Act—the compulsion of unreasonably delayed agency action. The Court will thus analyze Plaintiffs' APA claim only. *See Shahijani v. Laitinen*, No. 23-CV-03967-RGK-MRW, 2023 WL 6889774, at *2 (C.D. Cal. Oct. 6, 2023) ("Where, as here, a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only."). If Plaintiffs' APA claim fails, their claim under the Mandamus Act fails as well. *See Vaz*, 33 F.4th at 1138–39.

The Court has subject matter jurisdiction over Plaintiffs' APA claims pursuant to 28 U.S.C. § 1331. *See id.* at 1135. Whether Plaintiffs' APA claim may proceed, therefore, depends on whether it survives scrutiny under Rule 12(b)(6).

---

Cir. 2002)); *see also Or. Nat. Desert Ass'n v. Bushue*, 644 F. Supp. 3d 813, 838–39 (D. Or. 2022). Plaintiffs concede there is "no specific time frame for completion of agency action . . . mandated by the relevant statutes." *See* Opp'n at 20. So, Plaintiffs cannot state a claim for violation of § 706(1)'s "unlawfully withheld" prong.

[4] The Mandamus Act allows a district court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See* 28 U.S.C. § 1361.

25-CV-572 JLS (BLM)

## II.    Mandatory Duty

The Parties dispute whether the Department bears a mandatory duty to finalize visa applications, but the Court need not resolve the issue. *See Lee v. Blinken*, No. 23-CV-1783 (DLF), 2024 WL 639635, at *4 (D.D.C. Feb. 15, 2024) (assuming without deciding the existence of a mandatory duty and proceeding to assess the reasonableness of the alleged delay). Even assuming a mandatory duty exists, Plaintiffs fail to plausibly allege an unreasonable delay.

## III.    Unreasonable Delay

To determine whether an agency has performed its duty within a reasonable time, the Ninth Circuit "use[s] the *TRAC* factors—the six-factor balancing test announced in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*")." *Vaz*, 33 F.4th at 1137. These factors include:

> (1) the time agencies take to make decisions must be governed by a "rule of reason[";]
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* (alteration in original) (quoting *TRAC*, 750 F.2d at 80). Though the first factor is "[t]he most important[,] . . . it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). A Court should compel action under the *TRAC* factors only when the agency's failure to respond is "so egregious" as to warrant relief. *TRAC*, 750 F.2d at 79.

Plaintiffs urge the Court to reserve application of the *TRAC* factors until they have had the opportunity for discovery. *See* Opp'n at 26–27. True, some courts have recognized that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)). But plaintiffs in visa-application cases must nevertheless plausibly allege unreasonable delay under the *TRAC* factors to survive a motion to dismiss. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 338–40 (D.C. Cir. 2023) (affirming dismissal, under Rule 12(b)(6), of lawsuits alleging that decisions on visa-related petitions had not been issued after approximately 4.5 years); *Shahijani*, 2023 WL 6889774, at *3 (similar); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 52–53 (S.D.N.Y. 2020) (similar). Indeed, authorizing discovery without such a showing would "lead to a substantial imposition on the Government" given "the surfeit of lawsuits challenging delays in processing visa applications." *Rashidi v. U.S. Dep't of State*, No. CV 23-1569 (JEB), 2023 WL 6460030, at *7 (D.D.C. Oct. 4, 2023).

Accordingly, the Court will proceed to evaluate the *TRAC* factors. In the visa context, the "considerations contemplated by the *TRAC* factors can be grouped into four basic inquiries":

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for [an agency]'s delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the [agency] to act (factors three and five)? [Third], how might forcing the agency to act thwart its ability to address other priorities (factor four)?" Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 161 (D.D.C. 2022) (alterations in original and citation omitted) (quoting *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)).

/ / /

/ / /

25-CV-572 JLS (BLM)

### A.    Factor One: Rule of Reason

"[T]he first factor requires courts to consider both the length of the delay and the reasons for the delay." *Shahijani*, 2023 WL 6889774, at *4.  As noted in *Tate v. Pompeo*,

> Whether a "rule of reason" exists for agency action "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."

513 F. Supp. 3d 132, 148 (D.D.C. 2021) (alteration in original) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

#### 1.    Length of Delay

Where visa applications are concerned, courts often begin with the length of delay, turning to precedent to determine whether a delay's length renders it plausibly unreasonable.  *See, e.g.*, *Sawahreh*, 630 F. Supp. 3d at 162; *Sha v. Blinken*, No. 2:23-CV-05126-SVW-AS, 2023 WL 9379189, at *4 (C.D. Cal. Dec. 15, 2023).  Before engaging in this analysis, however, the Court must resolve a threshold issue—at what point did the delay in this case begin?

Plaintiffs encourage the Court to begin its measurement on the date Jarrahi submitted the petition, which would result in a delay of approximately 4.2 years.  Compl. ¶ 124; Opp'n at 28.  Courts, however, have uniformly rejected Plaintiffs' suggested analysis.  Instead, courts measure delay beginning on the date of the last concrete step taken by the government—typically, the date of the consulate interview.  *See, e.g.*, *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022); *Janay v. Blinken*, No. CV 23-3737 (RDM), 2024 WL 3432379, at *11 (D.D.C. July 16, 2024); *Ferdowski v. Blinken*, No. 8:23-CV-01123-JWH-KES, 2024 WL 685912, at *4 n.26 (C.D. Cal. Feb. 12, 2024).

There is good reason for this approach.  First, per Plaintiffs' own allegations, initial visa petitions are processed by a separate agency—USCIS—from the agency responsible

for processing visa applications (the Department). *See* Compl. ¶¶ 59–69. So, the delay between when Jarrahi filed the initial petition and when Jarrahikhameneh's application became documentarily complete—here, a little less than a year—cannot be attributed to any action—or inaction—by the Department. *See Throw v. Mayorkas*, No. 3:22-CV-05699-DGE, 2023 WL 2787222, at *4 (W.D. Wash. Apr. 5, 2023) ("The court will not impute USCIS's delay to the State Department."); *Ahmed v. U.S. Dep't of State*, No. 23-CV-02474-SVK, 2024 WL 315705, at *4 (N.D. Cal. Jan. 26, 2024) (rejecting the plaintiff's argument that the court should factor in USCIS's thirty-one-month processing time and instead measuring delay beginning at the date of the last Department action).

Second, it makes little sense to penalize an agency for processing time an applicant does not argue is unreasonable. Here, Plaintiffs submit no reasoned argument suggesting either that USCIS took an unreasonably long time to process Jarrahi's petition, or that the Department took an unreasonably long time to schedule and conduct Jarrahikhameneh's interview. Instead, the Complaint focuses solely on delay stemming from administrative processing. *See, e.g.*, Compl. ¶¶ 85–86, 105. So, the question before the Court is not whether the *government's* visa processing was unreasonable from start to finish, but instead whether the *Department's* post-interview *administrative processing* has taken an unreasonably long time.

Jarrahi's application has been mired in administrative processing for approximately twenty months—ten months between Jarrahikhameneh's interview and the filing of the Complaint and ten months in the current litigation. Other courts have found such a delay insufficient to state a claim. *See, e.g.*, *Rezai v. Blinken*, No. 24-CV-10616-CAB-JLB, 2024 WL 4830988, at *4 (S.D. Cal. Nov. 18, 2024) (nineteen-month delay); *Jazi v. Rubio*, No. 25-CV-27 BEN, 2025 WL 1222499, at 3 (S.D. Cal. April 25, 2025) (seventeen-month delay); *Ferdowski*, 2024 WL 685912, at *4 (twelve-month delay); *Fakhimi v. Dep't of State*, No. CV 23-1127 (CKK), 2023 WL 6976073, at *8 (D.D.C. Oct. 23, 2023) (eighteen-month delay); *Infracost*, 732 F. Supp. 3d at 1255 (fourteen-month delay); *Sharifishourabi v. Blinken*, No. 23-3382 (RC), 2024 WL 3566226, at *7 (D.D.C. July 29, 2024) (nearly

two-year delay); *Morales v. Mayorkas*, No. 23-CV-1758 BEN (MSB), 2024 WL 2884554, at *1, 3 (S.D. Cal. June 7, 2024) (finding seventeen-month delay reasonable in spousal immigration case). Indeed, courts have deemed much longer delays reasonable. *See Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (noting immigration delays in excess of five, six, or seven years are generally found unreasonable, those between three and five years are often found reasonable, and that delay of "slightly more than a year is drastically short of what constitutes an unreasonable delay"); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) ("In this district, courts have generally found delays of four years or less not to be unreasonable."); *Nusrat*, 2022 WL 4103860, at *6 (D.D.C. Sept. 8, 2022) (dismissing claim for unreasonable delay where the visa application remained in administrative processing for thirty-two months).

Plaintiffs seek to distinguish the above by pointing the Court to cases where "courts have found that 9 months to 2 years is unreasonable." Opp'n at 28. Plaintiffs' first case, *Network Optix Inc., et al. v. Marco Rubio*, found that a six-month delay for the adjudication of a H-1B work visa—which typically are only valid for three years—was unreasonable because the plaintiff was running out of available time under the visa. No. 2:24-cv-06505-SK, 2025 U.S. Dist. LEXIS 27769, at *11–12 (C.D. Cal. Feb. 14, 2025). This case is inapplicable to the present facts. Plaintiffs' other cases are also unpersuasive. *See Am. Academy of Religion v. Chertoff*, 463 F. Supp. 2d 400, 422 (S.D.N.Y. 2006) (considering an H-1B visa); *Mahmood v. Blinken*, No. 23-1596, 2023 U.S. Dist. LEXIS 177638, at *17 (E.D. Pa. Sept. 28, 2023) (declining to apply the *TRAC* factors and declining to address the reasonableness of the delay). Therefore, based on the facts alleged, the length of the delay to date is not egregious.

### 2. Reason for Delay

Length of delay alone, however, is not dispositive—the Court must also consider the reasons behind the delay. Here, said reason is clear—the Department is conducting a time-intensive, interagency security screening to determine whether Jarrahikhameneh poses a

threat to the United States. *See* Mot. at 20. And, as the Court has previously recognized, the decision to grant a visa frequently implicates "relations with foreign powers[] or involve[s] classifications defined in the light of changing political and economic circumstances." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (internal quotation marks omitted) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)). In short, making a final determination on a visa application implicates complex matters that fall outside of courts' typical expertise. *See Qureshi v. Napolitano*, No. C-11-05814-YGR, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012) (noting courts consider the complexity of the agency investigation when determining whether a delay is reasonable). Given the complex and sensitive nature of visa determinations, a delay of less than two years to process additional, security-related information about an applicant is not facially unreasonable. *See id.* at *4–5 (collecting cases finding security-related delays of four years or less reasonable); *Darchini v. Pompeo*, No. SACV 19-1417 JVS (DFMx), 2019 WL 6841991, at *5 (C.D. Cal. Sept. 24, 2019) ("The Court is persuaded by the Government's argument that this vetting process 'is more difficult and time consuming for Iranian nationals because, the Presidential Proclamation explains, Iran does not adequately provide public-safety and terrorism-related information.'").

This is particularly true given the alleged backlog faced by the Overseas Security Advisory Council ("OSAC"). *See Da Costa*, 80 F.4th at 342 ("When an agency faces a shortage of resources to resolve a backlog, we consider those resource limitations and the labor needed to resolve them in assessing agency delay."). As Plaintiff contends, given that a total of 40 analysts face a backlog of approximately 72,000 Security Advisory Opinion ("SAO") requests, it makes sense that security screenings take multiple months to complete. *See* Opp'n at 15; *Armah v. U.S. Dep't of State*, No. CV 22-1714 (BAH), 2024 WL 2721634, at *7 (D.D.C. May 28, 2024) (weighing backlog of visa applications in the government's favor under *TRAC* factor one).

Plaintiffs contend that because "SAO requests[] are [not] addressed or resolved in a first-in-first-out basis, . . . the adjudication does not follow rule of reason." Opp'n at 28.

25-CV-572 JLS (BLM)

True, "courts . . . have regularly found that the Government applies a 'rule of reason' to the review of visa petitions by adjudicating applications in the order they were filed." *Fakhimi*, 2023 WL 6976073, at *8. But it does not follow that first-in-first-out processing constitutes the *only* reasonable method by which the government may resolve visa-related matters. *Cf. Ferdowski*, 2024 WL 685912, at *5 n.29 ("[T]he Government is entitled to determine its own 'line' for review—whether on a first-in-first-out basis or otherwise."). Indeed, in some circumstances, other processing methods may prove more advantageous than first-in-first-out processing. *See Da Costa*, 80 F.4th at 336–37, 340 (concluding USCIS's "availability-screened queue" constituted a rule of reason).

Tellingly, Plaintiffs offer no argument as to why the Department's processing approach, as outlined in the Jachim Declaration ("Jachim Decl.," ECF No 7-3), is unreasonable. And the Court does not find it unreasonable to, for instance, instead of strictly adhering to first-in-first-out processing, ask analysts to specialize by region to increase processing efficiency down the line. *See* Jachim Decl. ¶¶ 21–24. Nor does it seem unreasonable to collect information from multiple agencies before reaching a final recommendation on visa eligibility. *Id.* ¶ 21.

As the alleged delay in Plaintiffs' case is within the range of delay considered reasonable by courts in visa-application cases, and the cause of the delay does not appear to lack reason, the first *TRAC* factor weighs strongly in Defendant's favor.

### B.    Factor Two: Congressional Timetable or Indication of Speed

The second *TRAC* factor asks whether Congress has provided "a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80. Plaintiffs, in arguing this factor favors them, rely on three purported indications of congressional intent. First, 8 U.S.C. § 1571(b) states: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ."

/ / /

/ / /

Second, § 237 of Public Law 106-113 provides:

> It shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens and nonimmigrant K–1 visa applications of fiancés of United States citizens within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service.

113 Stat. 1501, 1501A-430 (1999). Finally, the Department's Foreign Affairs Manual ("FAM") operationalizes the above law, stating:

> [T]he Department [is required to] establish a policy under which immediate relative (and fiancé(e)) visas be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security (DHS); all other family-based [immigrant visas ("IV")] must be processed within 60 days. The Department expects all IV units to strive to meet the 30/60-day requirements.

9 FAM 504.7-2(b).

Unfortunately for Plaintiffs, numerous courts have concluded these statutory and regulatory provisions are "precatory" and therefore entitled to little weight. *Janay*, 2024 WL 3432379, at *12; *see also Poursohi v. Blinken*, No. 21-CV-01960-TSH, 2021 WL 5331446, at *7–9 (N.D. Cal. Nov. 16, 2021) (similar); *Noori v. Blinken*, No. CV 23-1463 (TJK), 2024 WL 939990, at *3 n.3 (D.D.C. Mar. 5, 2024) (noting the above FAM language does not "displace the significant discretion that Congress provided to the federal agencies tasked with processing immigration applicants and vetting them to protect the national security" (quoting *Pourshakouri v. Pompeo*, No. 20-CV-402 (RJL), 2021 WL 3552199, at *9 n.11 (D.D.C. Aug. 11, 2021))).

The Court recognizes that statutory timelines referenced by Congress, even if aspirational, are due some weight in the TRAC analysis. *See Da Costa*, 80 F.4th at 344. So, factor two weighs somewhat in Plaintiffs' favor. The weight accorded to this factor, however, is slim. *See id.* (declining to give significant weight to factor two, as "the delay has not reached the level of disproportionality [the D.C. Circuit has] previously held

sufficient to grant relief"). Indeed, "a contrary conclusion would ignore 'the overwhelming caselaw rejecting unreasonable delay challenges for applications pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571(b).'" *Ortiz v. U.S. Dep't of State*, No. 1:22-CV-00508-AKB, 2023 WL 4407569, at *7 (D. Idaho July 7, 2023) (quoting *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.D.C. 2021)).

### C.    Factors Three and Five: Nature of Interest Prejudiced by Delay and Whether Health and Human Welfare Are at Stake.

Factors three and five—concerning the impact of the delay on health and human welfare—also favor Plaintiffs. Plaintiffs' interest in ending their separation is "undeniably significant." *See Didban*, 435 F. Supp. 3d at 177. Indeed, "prolonged separation from a child or other immediate family member may be considered a risk to human health and welfare." *Armah*, 2024 WL 2721634, at *7; *see also Andalib v. United States*, No. 23-CV-01110-FWS-KES, 2024 WL 685945, at *6 (C.D. Cal. Feb. 9, 2024) ("The Court acknowledges the effect on an individual's health and welfare separation from family can cause . . . ."). Factors three and five thus weigh in Plaintiffs' favor.

### D.    Factor Four: Effect on Competing Priorities

Factor four—whether compelling the agency to act would detract from its higher or competing priorities—weighs strongly in Defendant's favor. In *Vaz*, the Ninth Circuit affirmed summary judgment over a plaintiff's claim of unreasonable delay with respect to an Executive Office for Immigration Review ("EOIR") investigation, reasoning that,

> The EOIR has limited resources and has hundreds of pending complaints, many of which were received before [the plaintiff] filed his complaint and presumably some of which the EOIR has determined merit priority. Requiring the EOIR to investigate [the plaintiff]'s complaint would interfere with the EOIR's discretion in prioritizing its activities and allocating its resources.

33 F.4th at 1138. In so holding, the Ninth Circuit cited *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991). There, the D.C. Circuit denied relief under the *TRAC* factors, even though other factors favored relief, when ordering relief would place the

petitioner at the head of a queue of agency adjudications without producing a net gain. *Barr Lab'ys*, 930 F.2d at 75–76.

In numerous cases involving visa applications, courts have applied *Barr* and concluded that the fourth *TRAC* factor weighs heavily in favor of the government at the 12(b)(6) stage. These courts reason that expediting plaintiffs' applications would "necessarily come 'at the expense of other similarly situated applicants.'" *Da Costa*, 80 F.4th at 344 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016)); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (concluding processing of visa applications is "the very type of agency action . . . that if compelled would presumably delay other adjudications"). So too where plaintiffs have alleged post-interview delay related to administrative processing. *See, e.g.*, *Shahijani*, 2023 WL 6889774, at *5; *Davila*, 2024 WL 711618, at *8; *Sha*, 2023 WL 9379189, at *5.

Plaintiffs' counterarguments do not convince the Court to depart from the above precedents. Plaintiffs castigate the Department for "not establish[ing] that there is a queue, let alone Plaintiffs' place therein." Opp'n at 31. This argument, however, conveniently ignores Plaintiffs' own allegations regarding a backlog of approximately 72,000 SAO requests. *See id.* at 15 (citing Jachim Decl. at ¶¶ 22–25). Moreover, "one need not unearth the details of the visa-adjudication process at [embassies] and elsewhere to surmise that the relief Plaintiffs seek would reorder [Department] priorities." *Rashidi*, 2023 WL 6460030, at *6 (alteration in original) (quoting *Skalka*, 246 F. Supp. 3d at 153). "That outcome is obvious '[w]here the agency action sought is one of many similar adjudications that the agency must complete.'" *Id.*

As Plaintiffs' requested relief would necessarily impact the processing of similarly situated applicants and reorder Department priorities, factor four strongly favors Defendant.

### E.   Factor Six: Agency Impropriety

The sixth factor—which concerns impropriety by the agency—is neutral. As *TRAC* emphasized that plaintiffs need not assert impropriety to prevail, the absence of impropriety

25-CV-572 JLS (BLM)

does not weigh against Plaintiffs. 750 F.2d at 80. But neither does the sixth factor weigh in their favor. Plaintiffs contend that the mere existence of the delay—and the absence of efforts by Defendant to either expedite Jarrahikhameneh's application or provide a substantial update—itself constitutes "extreme bad faith." Compl. at ¶ 114. This argument misunderstands factor six, which focuses not on the delay itself, but whether the reason behind the delay is improper (*e.g.*, intentional or motivated by animus). *See Sawahreh*, 630 F. Supp. 3d at 164; *Pub. Citizen Health Rsch. Grp. v. Comm'r*, 740 F.2d 21, 34 (D.C. Cir. 1984) (implying impropriety—in the form of industry pressure—played a role in the agency's delay). The Complaint does not plausibly allege such impropriety. *See Milligan v. Pompeo*, 502 F. Supp. 3d 302, 320 (D.D.C. 2020) (noting allegations criticizing the defendants "efforts and prioritization" do not justify a reasonable inference of impropriety); *Babaei v. U.S. Dep't of State*, No. CV 23-1244 (TJK), 2024 WL 1178453, at *8 (D.D.C. Mar. 19, 2024) (rejecting argument that length of delay creates an appearance of impropriety).

In sum, based on Plaintiffs' allegations, the Court finds that Plaintiffs have not plausibly alleged unreasonable delay. The length of the alleged delay has not yet approached that of delays considered unreasonable by courts, Plaintiffs' allegations do not suggest that the delay lacks reason, and granting Plaintiffs' requested relief would both infringe on the Department's ability to prioritize its resources and affect the processing of other applicants. At this stage, these considerations are dispositive. Consequently, the Court **DISMISSES** Plaintiffs' claim for unreasonable delay under the APA and Plaintiffs' claim under the Mandamus Act.

///

///

///

///

///

///

18

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 6).  As the Court concludes that no amendment consistent with Plaintiffs' Complaint would change the Court's conclusion regarding unreasonable delay at this time, the Court **DISMISSES** Plaintiffs' Complaint **WITHOUT LEAVE TO AMEND**.  *See Shahijani*, 2023 WL 6889774, at *5; *see also* Order, *Da Costa v. Immigr. Inv. Program Off.*, No. 22-1576 (JEB) (D.D.C. 2022), ECF No. 16 (dismissing entire unreasonable-delay action, without mention of leave to amend, after granting the defendants' motion to dismiss), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023).  This dismissal, however, is **WITHOUT PREJUDICE** to refiling should later circumstances demonstrate an unreasonable delay.  *See id.*  As this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  February 9, 2026

Hon. Janis L. Sammartino
United States District Judge

25-CV-572 JLS (BLM)